# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

In re Kevin B. Koch, Debtor.

Kevin B. Koch,

      Appellant,

v.

SKF USA, Inc.,

      Appellee.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-01606 ADM

───────────────────────────────────────────────

Jamie R. Pierce, Esq., Hinshaw & Culbertson LLP, Minneapolis, MN, on behalf of Appellant Kevin B. Koch.

Robert T. Kugler, Esq. and Edwin H. Caldie, Esq., Leonard, Street and Deinard, P.A., Minneapolis, MN, and Stephen J. Sundheim, Esq., Pepper Hamilton LLP, Philadelphia, PA, on behalf of Appellee SKF USA, Inc.

───────────────────────────────────────────────

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Appellant Kevin B. Koch's ("Koch") appeal [Docket No. 1] of United States Bankruptcy Court Judge Robert J. Kressel's May 22, 2012 Order [Docket No. 1, Attach. 3]. Judge Kressel ruled that a judgment debt owed by Koch for misappropriation and use of Appellee SKF USA, Inc.'s ("SKF") trade secrets was nondischargeable as a debt for a willful and malicious injury under § 523(a)(6) of the Bankruptcy Code. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## II. BACKGROUND

Koch was formerly employed by Preventative Maintenance Company, Inc. ("PMCI") as a technical reliability engineering manager. Mem. Op. & Order, SKF v. Bjerkness, No. 08 C

4709 (N.D. Ill. Aug. 9, 2010) [Docket No. 3, Attach. 1, Tab 3] ("Trial Ct. Op.") at APP. 16. PMCI was a "reliability services" business, which monitored the performance of clients' industrial equipment to improve equipment functioning and to avoid unexpected equipment failures. Id. SKF acquired PMCI in January of 2007 for $22 million, and Koch became an employee of SKF. Id. at APP. 16, 28. As an SKF employee, Koch signed a secrecy agreement that prohibited him from disclosing SKF's "technical or proprietary information, trade secrets and confidential business matters" during or after his employment with SKF. Id. at APP. 17.

In May 2008, Koch's co-worker, Dale Bjerkness, left SKF and formed a competing firm named Equipment Reliability Services, Inc. ("ERSI"). Id. at APP. 15, 17. Over the following two months, Koch and two other co-workers, Joseph J. Sever and Walter Remick, Jr., resigned from SKF to work at ERSI. Id. at APP. 17. Prior to leaving SKF, Koch, Bjerkness, Sever and Remick transferred electronic files from SKF to their own computer storage devices. Id. Koch personally transferred 7,000 files during his last days at SKF. Mem. Op. & Order, SKF v. Bjerkness, 636 F. Supp. 2d 696, 704 n.2 (N.D. Ill. 2009) ("SKF I"). The transferred files were accessed by ERSI at the time ERSI was making proposals and providing services to former SKF customers. Trial Ct. Op. at APP. 18.

On September 19, 2008, SKF filed an action in the United States District Court for the Northern District of Illinois (the "Illinois Court") against Koch, Bjerkness, Sever and Remick (collectively, "Defendants") seeking an injunction and other relief under the Illinois Trade Secrets Act ("ITSA"). Id. at APP. 19. At the preliminary injunction hearing, Defendants admitted to taking SKF's information without SKF's authorization, but contended "they could easily have generated all the information that they transferred on their own, and that copying that

2

information simply provided a 'shortcut.'" SKF I, 636 F. Supp. 2d at 704.

In January 2010, Judge Rebecca R. Pallmeyer of the Illinois Court held a bench trial on SKF's claim for damages under ITSA. Trial Ct. Op. at APP. 19. To prevail on its ITSA claim, SKF was required to "demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." Id. at APP. 22 (quoting Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 721 (7th Cir. 2003)). The evidence adduced at trial included Koch's testimony that during his employment with PMCI and SKF he had learned and memorized a database pattern used by SKF to collect, organize, and present data from a customer's machinery. Id. at APP. 19-21. Koch further testified that he recreated and used this database pattern at ERSI. Id. at APP. 20-21.

The Illinois Court found that the database pattern and other information taken by Defendants constituted trade secrets because the information was not widely known in the industry, gave SKF a competitive advantage, derived economic value from remaining secret, and because SKF made reasonable efforts to maintain the secrecy of the information taken. Id. at APP. 23-25. Thus, Defendants were found to be jointly and severally liable for violating the ITSA. Id. at APP. 26, 30.

The Illinois Court next determined the amount of compensatory damages to award SKF, and analyzed whether exemplary (punitive) damages were warranted. Compensatory damages under ITSA "can include both the actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Id. at APP. 26 (quoting 765 ILCS 1065/4(a)). SKF was not awarded damages for lost business, because SKF had failed to show a link between Defendants' misappropriation of trade secrets

and SKF's loss of customers to ERSI. Id. at APP. 27. Nevertheless, the Illinois Court found that "[e]ven if SKF cannot prove such a link, it is still entitled to damages for the harm of the misappropriation of its trade secrets; that is the injury under ITSA. 'The harm that results from wrongful misappropriation of information results from the defendant's use of that information.'" Id. (quoting U.S. Gypsum Co. v. Lafarge N. Am. Inc., No. 03 C 6027, 2009 WL 3871824, at *1 (N.D. Ill. Nov. 16, 2009) (alteration omitted)). Accordingly, Defendants were found to be liable for compensatory damages for the unjust enrichment caused by the misappropriation, because "the information taken was subject to trade secret protection in part because of its economic value," and "taking SKF's trade secrets gave Defendants' business an advantage it would not otherwise have had." Id. at APP. 28. SKF was thus awarded compensatory damages of $41,068.40, which equaled the amount of profits ERSI earned from servicing its customers using SKF's trade secrets. Id. at APP. 28-29.

ITSA also allows a court to award exemplary damages including attorney fees if "willful and malicious misappropriation exists." Id. at APP. 29 (quoting 765 ILCS 1065/4(b)). The Illinois Court found the misappropriation was willful and malicious because the "Defendants admitted to taking thousands of files, they knew that they had no permission to do so, and they were not immediately forthcoming when SKF demanded the return of the files." Id. Accordingly, exemplary damages of $40,000 for punishment and deterrence were awarded, as well as attorney fees and costs of $1,122,319.98.[1] Id. at APP. 30; Judgment, Nov. 8, 2011

---

[1] The issue of the reasonableness of SKF's attorney fees was fully litigated and finally determined in the Illinois action. See SKF v. Bjerkness, Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395 (N.D. Ill. Sept. 27, 2011). The amount of the judgment for attorney fees is not at issue here; rather, the only issue is whether the judgment is dischargeable in bankruptcy.

[Docket No. 6, Attach. 1] at APP. 80. Defendants have paid SKF the compensatory damages and $40,000 of the exemplary damage award. The judgment for attorney fees remains unpaid.

On January 5, 2012, Koch filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. SKF filed an adversary complaint against Koch, claiming the judgment debt for attorney fees was excepted from Koch's bankruptcy discharge because it arose from a willful and malicious injury. On a motion for summary judgment by SKF, the Bankruptcy Court accorded collateral estoppel effect to the findings in the Illinois action and concluded they satisfied the "willful" and "malicious" requirements for excepting a debt from discharge under § 523(a)(6) of the Bankruptcy Code. Tr. of May 22, 2012 Bankruptcy Ct. H'rg [Docket No. 3, Attach. 1, Tab 1] ("Bankruptcy Ct. Tr.") at APP. 10-11. Accordingly, the Bankruptcy Court granted summary judgment to SKF on its claim that the judgment debt is not dischargeable. Id. at APP. 11.

Koch now appeals, arguing Judge Kressel of the Bankruptcy Court erred in finding the "malicious" requirement of § 523(a)(6) was satisfied. Koch contends this requirement was not met because: (1) Judge Pallmeyer found SKF had not been harmed by Defendants' conduct; (2) the Bankruptcy Court drew a factual inference in SKF's favor on the issue of intent when Koch, as the nonmoving party, was entitled to have all inferences drawn in his favor; and (3) the Bankruptcy Court wrongly applied collateral estoppel to the issue of intent. Koch also argues the Bankruptcy Court erred in determining that all of the debt owed by Koch to SKF was excepted from the bankruptcy discharge.

### III. DISCUSSION

**A.     Standard of Review**

A district court reviews a bankruptcy court's legal conclusions *de novo* and its findings of

fact for clear error. Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987). A bankruptcy court's entry of summary judgment is reviewed by a district court *de novo*. Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978, 981 (8th Cir. 1997). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Analysis**

"The collateral estoppel doctrine applies in bankruptcy proceedings brought under § 523(a)(6)." Sells v. Porter (In re Porter), 539 F.3d 889, 894 (8th Cir. 2008) (citing Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999)). A party asserting collateral estoppel must show the following elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

Id. (quoting Robinnette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007)).

6

Section 523(a)(6) of the Bankruptcy Code bars the discharge of "debts . . . for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). In determining whether a debt is excepted from discharge under § 523(a)(6), courts must "first determine exactly what 'injury' the debt is 'for,' and then determine whether the debtor both 'willful[ly] and malicious[ly]' caused that 'injury.'" Blocker v. Patch (In re Patch), 526 F.3d 1176, 1181 (8th Cir. 2008) (alterations in original).

### 1. Injury

"Injury" under § 523(a)(6) means the "invasion of the legal rights of another, because the word 'injury' usually connotes legal injury . . . in the technical sense.'" In re Porter, 539 F.3d at 894 (quoting Geiger v. Kawaauhau (In re Geiger), 113 F.3d 848, 852 (8th Cir. 1997), aff'd, 523 U.S. 57 (1998)). Here, Koch's misappropriation of SKF's trade secrets in violation of the ITSA is the "injury" from which the debt (i.e., the judgment for attorney fees) arose. See Bankruptcy Ct. Tr. at APP. 9-10.

### 2. Willful

For the purposes of § 523(a)(6), "the term willful means deliberate or intentional." In re Madsen, 195 F.3d at 989. The Illinois Court found "[t]he individual Defendants admitted to taking thousands of files, they knew that they had no permission to do so, and they were not immediately forthcoming when SKF demanded the return of the files." Trial Ct. Op. at APP. 29. Therefore, Koch's injury to SKF was willful.

### 3. Malicious

An injury is "malicious" under § 523(a)(6) if the debtor's actions are "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial

7

harm." Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985). Malice requires a level of culpability going beyond an intentional violation of another's legal rights; the debtor must also expect that harm is certain or substantially certain to occur. Id. "While intentional harm may be very difficult to establish, the likelihood of harm in an objective sense may be considered in evaluating intent." Id.

Defendants "chose to take and use" trade secrets owned by SKF. Trial Ct. Op. at APP. 28. As such, Defendants' actions were targeted at SKF. Additionally, Defendants took thousands of SKF files knowing they were not permitted to do so and used SKF's trade secrets at ERSI to save time and service ERSI customers. Id. at APP. 19, 29. Defendants' conduct was certain to harm SKF by destroying the secrecy of trade secrets for which SKF had paid considerable value, and by giving SKF's competitor an advantage it would not have otherwise had. Thus, Koch and the other Defendants "act[ed] with malice by intending or fully expecting to harm the economic interests" of SKF. In re Long, 774 F.2d at 882; see also Engler Eng'g Corp. v. Balta (In re Balta), 151 B.R. 506, 508 (Bankr. E.D. Mo. 1993) (giving collateral estoppel effect to a Florida Court's findings that a debtor intentionally misappropriated and used trade secrets, and concluding such findings satisfied the Eighth Circuit's definition of "willful and malicious" under § 523(a)(6)). Therefore, as the Bankruptcy Court correctly concluded, the findings in the Illinois action establish as a matter of law that Koch's injury to SKF was malicious.

Koch argues the malice requirement has not been satisfied because SKF was found not to have been harmed by Defendants' conduct. Appellant's Br. at 1-2 ¶¶ 2,7-9. Koch contends the finding was limited to unjust enrichment, as SKF had not shown a link between Defendants'

8

misappropriation and SKF's loss of customers. Koch insists unjust enrichment does not satisfy the "harm" required for an injury to be "malicious" under § 523(a)(6).

This argument ignores the express finding that SKF had been harmed by Defendants' conduct despite SKF's inability to prove that the misappropriation caused SKF to lose customers: "Even if SKF cannot prove such a link, *it is still entitled to damages for the harm* of the misappropriation of its trade secrets; that is the injury under ITSA. The *harm* that results from wrongful misappropriation of information results from the defendant's use of that information." Trial Ct. Op. at APP. 27 (emphases added) (alteration and internal quotation marks omitted).

Defendants' use of SKF's information harmed SKF by reducing the economic value of its trade secrets. "[T]he information taken was subject to trade secret protection in part because of its economic value." Id. at APP. 28. "SKF paid $22 million for PMCI in order to obtain the existing company's valuable resources, which included the trade secrets that Defendants misappropriated." Id. The economic benefit of SKF's trade secrets derived from their continued secrecy. Id. at APP. 23. The trade secrets no longer continued to be secret when Defendants used them to service customers at ERSI. Defendants' use of SKF's trade secrets also harmed SKF by unfairly altering the competition between SKF and ERSI. See id., at APP. 23 ("[T]aking SKF's trade secrets gave Defendants' business an advantage it would not otherwise have had."). These findings establish Defendants were unjustly enriched at SKF's expense. See HPI Health Care Servs. Inc. v. Mt. Vernon Hosp., Inc., 131 Ill.2d 145, 160 (Ill. 1989) (stating unjust enrichment occurs when a defendant "retain[s] a benefit *to the plaintiff's detriment*") (emphasis added). Accordingly, the compensatory damages were awarded for harm caused by Defendants'

9

actions.

Koch also argues the Bankruptcy Court erred by concluding that the Illinois Court, in finding Koch intended to take business from SKF, "implicitly" found malice. See Bankruptcy Ct. Tr. at APP. 10. Koch contends the implicit finding equates to an inference, and that Koch, as the nonmovant on a summary judgment motion, was entitled to have all inferences drawn in his favor. Koch urges he is entitled to the inference "that when Koch actually took the trade secrets he did not intend to use them against SKF, and when he did use them, he reasonably believed it would simply save him time but would cause no harm to SKF." Appellant's Br. at 8.

This argument lacks merit for at least two reasons. First even if Koch intended only to use SKF's trade secrets to "save him time," this use was certain to harm SKF by destroying the secrecy of its protected information and unfairly altering the competition between SKF and ERSI. Thus, Koch's intent was malicious under § 523(a)(6). Second, the Bankruptcy Court did not draw a factual inference when it concluded that the Illinois Court's findings implicitly satisfied the maliciousness requirement of § 523(a)(6). Instead, it applied the substance of the findings to "the substance of what 523(a)(6) requires" and determined "that they line up here and that . . . the [Illinois] court found implicitly both willfulness and maliciousness." Bankruptcy Ct. Tr. at APP. 10. This analytical approach is often used by courts to determine whether a trial court or jury's factual findings meet the legal requirements of § 523(a)(6). See, e.g., Johnson v. Miera (In re Miera), 926 F.2d 741, 744 (8th Cir. 1991) (stating "the district court properly affirmed the bankruptcy court's holding that the state court judgment against [the debtor] *implicitly* contained a finding of malice") (emphasis added); In re Porter, 539 F.3d at 894-95 (applying jury's factual findings to elements of § 523(a)(6) to conclude the jury "necessarily

10

found" debtor willfully injured plaintiff). Therefore, the Bankruptcy Court did not err in concluding the Illinois Court "implicitly" found malice.

Koch further argues the Bankruptcy Court erred in applying collateral estoppel to conclude Koch acted with malicious intent. Appellant's Br. at 1 ¶¶ 3-4, 6. Koch contends the "[t]he issue of intent was not actually before the [Illinois] Court, as intent is irrelevant under the ITSA." Appellant's Reply Brief [Docket No. 12] at 4. However, the issue of intent was actually and necessarily litigated in the Illinois action when determining the issue of exemplary damages, because Judge Pallmeyer was required to determine whether the misappropriation was "willful and malicious" as that phrase is interpreted under the ITSA. Trial Ct. Op. at APP. 29. She found the "Defendants admitted to taking thousands of files, they knew that they had no permission to do so, and they were not immediately forthcoming when SKF demanded the return of the files." Id. Additionally, Defendants themselves admitted that they used SKF's trade secrets at ERSI believing it would save them from taking the time to generate that information. Therefore, Defendants' intent was actually litigated and finally determined in the Illinois action and essential to the judgment for exemplary damages. As such, the Bankruptcy Court properly applied collateral estoppel to the issue of whether Koch acted with malicious intent for the purposes of § 523(a)(6).

4. **All debt from § 523(a)(6) injury excepted from discharge**

The final issue raised by Koch on appeal is "[w]hether the bankruptcy court erred in finding that all of the debt claimed to be nondischargeable was in fact nondischargeable." Appellant's Br. at 1 ¶ 5. Koch's only mention of the issue beyond identifying it as an appeal issue is his assertion that "[a] defendant in a Section 523(a)(6) action should not be liable for

11

over $1,000,000 in attorney's fees for allegedly intending to cause harm, when there is nothing illegal about *the cause* of the harm, and when the defendant *never caused* the harm allegedly intended." Id. at 10 (quotation marks omitted) (emphases in original).

Section 523(a)(6) bars the discharge of "*any debt* . . . for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6) (emphasis added). This provision "does not distinguish between debts which are compensatory in nature and those which are punitive. The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt, rather than the nature of the debt." In re Miera, 926 F.2d at 745. Thus, all damages stemming from a willful and malicious injury are nondischargeable under § 523(a)(6). Id. The attorney fees at issue here were awarded as exemplary damages based on Koch's willful and malicious injury to SKF. Accordingly, the judgment debt for attorney fees is a nondischargeable debt under § 532(a)(6).

In sum, the Bankruptcy Court properly granted summary judgment to SKF because the findings in the Illinois action are entitled to collateral estoppel effect and establish as a matter of law that the debt arising from Koch's misappropriation of SKF's trade secrets was for a willful and malicious injury under § 523(a)(6).

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Koch's Appeal [Docket No. 1] is **DENIED**;

2. The Bankruptcy Court's Order of May 22, 2012 is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: September 17, 2012.